# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * *
ALFREDO GONZALEZ,
        Petitioner,
v.
SECRETARY OF HEALTH
AND HUMAN SERVICES,
        Respondent.
* * * * * * * * * * * * * * * * * * *

No. 17-174V
Special Master Christian J. Moran

Filed: May 27, 2021

redaction

Ronald C. Homer, Conway, Homer, P.C., Boston, MA, for Petitioner;
Mallori B. Openchowski, United States Dep't of Justice, Washington, DC, for Respondent.

## ORDER DENYING MOTION FOR REDACTION[1]

Alfredo Gonzalez alleged that the tetanus-diphtheria-acellular-pertussis vaccine caused him to suffer Guillain-Barré syndrome. Pet., filed Feb. 6, 2017. A decision issued March 23, 2021, awarding Mr. Gonzalez compensation based upon the parties' stipulation. Pursuant to 42 U.S.C. § 300aa–12(d)(4) and Vaccine Rule 18(b), he filed a motion requesting redaction of his name and medical information contained in the decision. For the reasons explained below, the motion is DENIED.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

## Public Access to Information about Petitioners in the Vaccine Program

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[2] provide a context for Mr. Gonzalez's motion to redact. Both histories suggest that redaction of a litigant's name is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 589, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., § 2104(b), § 2104(d)(1) (1st Sess. 1985). In addition to a compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986, proposed to improve the safety of vaccines. S. 827, 99th Cong. (2d Sess. 1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of vaccine compensation program claims in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were combined in one section. Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988).

---

[2] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

2

Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply. Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act. The 1987 amendments did not vary the disclosure provisions. However, in 1987, amendments changed the venue for filing claims from the district courts to the Claims Court. Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988. Pub. L. 100-203 § 4302. As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court. See 42 U.S.C. § 300aa–12(d) (1988). In this context, reports from special masters and decisions from Claims Court judges started to become available to the public. E.g., Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. Aug. 4, 1989).

Congress found that the parties were too litigious in the early years of the Program. H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115. Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review. Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

Congress also added a provision allowing limited redaction of decisions of special masters. Pub. L. 101-239 § 6601(g)(2). The reason Congress added this provision is not clear. See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years. Special masters tended to allow redaction without much analysis. After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction. Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011). On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote. 109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then-Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

After those orders were issued, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying redaction, or permitting redaction. Spahn v. Sec'y of Health & Human Servs., 133 Fed. Cl. 588, (2017) (stating that the decision to redact is a question of law and holding that redaction of "the names of petitioner . . . and petitioner's treating physicians . . . are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view"); Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015); R. K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016); see also Tarsell v. United States, 133 Fed. Cl. 805 (2017) (denying petitioner's request to redact the names of all medical providers from the Court's Opinion and Order).[3]

Against this background, Mr. Gonzalez filed his motion to redact.

**Procedural History Leading to the Motion to Redact**

On February 6, 2017, Mr. Gonzalez filed a petition that initiated the pending action. Once the Secretary has received a petition, the Secretary "shall publish notice of such petition in the Federal Register." 42 U.S.C. § 300aa–12(b)(2). In this instant action, for Mr. Gonzalez, the Secretary did so on July 29, 2016. National Vaccine Injury Compensation Program; List of Petitions Received, 82 Fed. Reg. 16214, 16215 (April 3, 2017).

The remainder of the procedural history does not contribute to resolving the pending motion for redaction. The parties eventually stipulated to a resolution

---

[3] Although the caption to the order in Tarsell identifies the "United States" as the respondent, the "Secretary of Health and Human Services" is the respondent in Vaccine Program cases. 42 U.S.C. § 300aa–12(b)(1).

4

based upon the costs and risks of continued litigation. The undersigned adopted this stipulation. Entitlement Decision, issued March 23, 2021.

The Entitlement Decision has not been made available to the public. The public's access depends upon the outcome of Mr. Gonzalez's April 6, 2021 motion to redact. Mr. Gonzalez's April 6, 2021 motion to redact requested that his name be reduced to initials. His motion was approximately four pages and was filed with an affidavit. Mr. Gonzalez maintained that he feared publication of the Entitlement Decision "may compromise his financial and personal security." Pet'r's Mot., filed April 6, 2021, at 4. Mr. Gonzalez averred that approximately 10 years ago, there was a security breach at the company for whom he was working. Exhibit 43 (affidavit) ¶ 3. Mr. Gonzalez further stated that he makes "an effort to protect [his] privacy, only providing personal information when absolutely necessary." Id. at ¶ 4.

The Secretary filed a response. The Secretary "takes no position on petittioner's motion" Resp't's Resp., filed May 17, 2021. With that submission, Mr. Gonzalez' motion for redaction is ready for adjudication.

**Standards for Adjudication**

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005). With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case). The Seventh Circuit (Posner, J.) has emphasized the need for trial courts to make their own assessment of requests to proceed anonymously and not to defer to the parties:

> [W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts.

Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir. 1997).

5

For redaction, the starting point is the Vaccine Act. Congress provided:

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B). As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments. Pub. L. 101-239 § 6601(g)(2). In the ensuing 30 years, the Federal Circuit has not had an occasion to interpret this statutory provision. Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), simply mirrors the statute. Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

## Analysis

Mr. Gonzalez relies upon the requirements of redaction as set forth in W.C. and offers the rationale that publication might compromise his physical and/or financial security.

 A. Mr. Gonzalez' reliance on W.C.

Mr. Gonzalez' first argument in favor of redaction is an argument that he satisfies the standards for redaction announced in W.C. However, as an order from the Court of Federal Claims, W.C. is only persuasive (not binding) precedent in this case and the persuasiveness of W.C. has been mixed. In some cases, special masters have followed W.C. See, e.g., Ranjbar v. Sec'y of Health & Human Servs., No. 15-905V, 2016 WL 4191127 (Fed. Cl. Spec. Mstr. June 21, 2016) (redacting decision awarding damages to initials); C.S. v. Sec'y of Health & Human Servs., No. 07-293V, 2013 WL 4780019 (Fed. Cl. Spec. Mstr. Aug. 19, 2013) (authorizing redaction). However, special masters have also disagreed with W.C. or narrowly limited W.C. to its facts. See, e.g., Anderson, 2014 WL

6

3294656, at *6 (disagreeing with usefulness of FOIA comparison); House v. Sec'y of Health & Human Servs., No. 99–406V, 2012 WL 402040, at *5-6 (Fed. Cl. Spec. Mstr. Jan. 11, 2012) (declining to grant redaction and rejecting petitioner's argument that the Secretary bears the burden to show a compelling public interest to justify release of medical information); Pearson v. Sec'y of Health & Human Servs., No. 03–2751V, 2011 WL 4863717, at *5 (Fed. Cl. Spec. Mstr. Sept. 22, 2011) (declining to grant redaction and stating "Petitioner's preference to keep his damages award private is not a sufficient reason to satisfy the [statutory] criteria and justify redaction in this case"). Given this divergent treatment of W.C., it was incumbent on Mr. Gonzalez to establish the soundness of W.C. in his briefing. But, he did not.

W.C. criticized the special master for beginning the analysis of whether decisions should be redacted with a general presumption that decisions of judicial officers are open to the public. W.C. states an analogy to the openness of judicial files is "inapposite." 100 Fed. Cl. at 460.[4] However, W.C. did not account for the series of legislation that placed the Office of Special Masters within the federal judiciary. Under the presumption that Congress is assumed to be aware of background principles when enacting legislation, See Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1329 n.3 (Fed. Cir. 2002), it can be inferred that Congress's choice endorsed routine publication of decisions of special masters. See Anderson, 2014 WL 3294656, at *3; Castagna, 2011 WL 4348135, at *10.

Although W.C. did not discuss Congress's placing of the Office of Special Masters within the Claims Court, W.C. relied upon two other legislative acts to support redaction. First, W.C. cited 42 U.S.C. § 300aa–25(c). 100 Fed. Cl. at 457-58. Second, W.C. cited a portion of legislative history, S. Rep. No. 99-483 (1986). Id. at 457. However, neither informs the analysis of whether special masters should redact petitioner's names from their decisions.

Section 25 is part of title 42, chapter 6A, subchapter XIX, part 2, subpart C, which is captioned "Assuring a safer childhood vaccination program in United States." Congress directed health care providers to record all vaccine

---

[4] While traditional litigation in courts differs in some respects from litigation in the Office of Special Masters, most differences such as speedier resolution are not about the public's access to information. The obvious difference – the public cannot access material kept by the Clerk's Office, see 42 U.S.C. § 300aa–12(d)(4) – is immediately contrasted by saying the public can access special masters' decisions.

7

administrations and to report possible adverse reactions to the Secretary. These reports of possible adverse vaccine reactions are submitted to the Vaccine Adverse Event Reporting System ("VAERS"). See Adverse Event Reporting for Childhood Vaccines, 53 Fed. Reg. 10565 (Apr. 1, 1988). In this context, Congress forbad the Secretary from releasing names of vaccine recipients.

In contrast, the portion of the Vaccine Program that concerns special masters is found within title 42, chapter 6A, subchapter XIX, part 2, subpart A, which is captioned "Program requirements." This provision does not explicitly forbid special masters from including names of petitioners in their decisions. Congress's choice to prevent disclosure of identifying information in one subpart, for the purpose of gathering vaccine administration data, implies that a disclosure of the same information under a different subpart, for the purpose of adjudicating vaccine claims, is permitted. See Figueroa, 715 F.3d at 1322-23 (discussing interpretive canon expressio unius est exclusion alteris).

Similarly, Senate Report No. 99-483, which W.C. cited, was associated with S. 827 as introduced on September 24, 1986. That version of S. 827 pertains to the Secretary's anticipated efforts to improve the safety of vaccines and did not contain a compensation program. See Castagna, 2011 WL 4348135, at *6 n.8. Thus, the legislative history associated with S. 827 appears to shed little light on whether a compensation program should redact decisions of judicial officers.

For these reasons, neither Mr. Gonzalez nor W.C. justifies turning away from the principle within the federal judiciary that promotes public access to decisions of special masters. Rather than look to analogues from traditional litigation, W.C. borrowed from FOIA, maintaining that the similarity in wording between one aspect of the Vaccine Act and one aspect of FOIA justified a holding that the statutes should be interpreted similarly. However, the similarity in wording becomes a more meaningful basis for analysis when two statutes are directed to the same purpose. See Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006) (refraining from applying the in pari materia canon for statutes addressing venue and subject matter jurisdiction); Erlenbaugh v. United States, 409 U.S. 239, 243-44 (1972). But, FOIA and the Vaccine Act do not share a common purpose. Anderson, 2014 WL 3294656, at *7; House, 2012 WL 402040, at *6; but see C.S., 2013 WL 4780019, at *2-3.

Consequently, Mr. Gonzalez' primary argument based upon W.C. is not accepted.

8

B.  Petitioner Has Not Demonstrated a Specific
Showing Warranting Redaction to Initials

In his motion, Mr. Gonzalez maintains that redaction is appropriate because the information contained in the March 23, 2021 decision might compromise his financial and personal security. However, these arguments are not persuasive.

In federal courts, parties must identify themselves. Fed. R. Civ. Proc. 17(a). In the Court of Federal Claims, the requirement is the same. U.S. Ct. Fed. Cl., R. 17. Nevertheless, parties in the federal courts may seek to proceed anonymously.

In evaluating whether certain Native Americans could present an amended complaint with some plaintiffs listed as "Does," the Court of Federal Claims borrowed from a Ninth Circuit case, Does I Thru XXII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). Wolfchild v. United States, 62 Fed. Cl. 521, 553 (2004).[5] The Ninth Circuit's test from Advanced Textile is just one of multiple formulations of factors trial courts should consider in evaluating a request to proceed anonymously. For other examples, see Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992); K.W. v. Hotlzapple, 299 F.R.D. 438, 441 (M.D. Pa. 2014); Nat'l Ass'n of Waterfront Employers v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). While the precise wording might vary, the tests generally consider several factors including "the party's need for anonymity against the general presumption that parties' identities be available to the public and the likelihood of prejudice to the opposing party." Wolfchild, 62 Fed. Cl. at 553-54. These factors are analyzed in reverse order.

*Likelihood of prejudice to opposing party*. The Secretary knows the identity of Mr. Gonzalez. Redacting this name to initials to prevent members of the public from learning this information would not harm the Secretary.

*Public interest in availability of decisions by judicial officers*. The right of the public to learn about decisions made by members of the judicial branch of their government is based, in part, on the right "to know who is using court facilities and procedures funded by public taxes." Doe v. Village of Deerfield, 819 F.3d 372, 377 (7th Cir. 2016); accord Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008).

---

[5] Although Wolfchild cited Advanced Textiles favorably, W.C. stated that the Ninth Circuit's criteria can be "draconian." W.C., 100 Fed. Cl. at 459 n.21.

9

Here, information about "who is using court facilities" is available to the public because the Secretary has disclosed some information in the Federal Register. The notice in the Federal Register provides the petitioner's name and the docket number. 82 Fed. Reg. at 16215.

Consequently, the Vaccine Act's requirement to disclose in the Federal Register actually supports a limited redaction. Because the public still knows (or can learn) who is using the publicly funded court system, redaction of names to initials is not completely contrary to the presumption of public access to decisions of judicial officers.

*Party's Need for Anonymity*. Mr. Gonzalez' request for a redaction of his name to initials is based on a perceived threat that publishing the decision will imperil his financial and physical security. Mr. Gonzalez does not spell out the connection. Presumably, Mr. Gonzalez is contending that someone will target his bank account to gain access to Mr. Gonzalez's financial information and/or someone will physically harm Mr. Gonzalez if Mr. Gonzalez refrains from complying with an extortion for the amount of compensation he received.

*Assessment*. Overall, the factors balance against redacting Mr. Gonzalez' name to initials. The most important factor is that Mr. Gonzalez is an adult. As discussed above, the long-standing tradition of public access to decisions of judicial officers weighs against allowing adults to redact their names.

Certainly, Mr. Gonzalez may legitimately worry about theft of his identity.[6] But, unfortunately, all adults might have a concern about identity theft. If a threat to financial security were sufficient to justify redaction, then redaction would become the norm as every decision incorporating a stipulation contains the name of an adult-petitioner and some financial award. See 42 U.S.C. § 300aa–12(d)(3)(A)(i) (obligating special masters to issue decisions that "include findings of fact"); Paresky v. United States, No. 18-23569, 2019 WL 4888689 (S.D. Fla. Aug. 30, 2019) (denying motion to seal complaint based, in part, on plaintiffs' fear of identity theft). By requiring special masters to make public decisions awarding petitioners compensation, Congress seems to have anticipated that names of petitioners as well as monetary awards would be available. Mr. Gonzalez's arguments, if successful, would largely undermine Congressional intent regarding the public's access to decisions in the Vaccine Program.

---

[6] Mr. Gonzalez asserted that he is taking precautions to protect his privacy. These efforts may help him, regardless of whether the Entitlement Decision is published.

## Conclusion

Mr. Gonzalez's April 6, 2021 motion for redaction of the March 23, 2021 Entitlement Decision is DENIED. Furthermore, this order, too, will become available to the public after the time for the parties to propose redactions has passed.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master
